```
 1  Michael J. Nader, SBN 200425
    michael.nader@ogletree.com
 2  Elizabeth D. Rhodes, SBN 218480
    elizabeth.rhodes@ogletree.com
 3  OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
 4  500 Capitol Mall, Suite 2500
    Sacramento, CA  95814
 5  Telephone:     916-840-3150
    Facsimile:     916-840-3159
 6
    Attorneys for Defendant
 7  W.W. GRAINGER, INC.
```

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| JENYFER FARIAS SANCHEZ, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>W.W. GRAINGER, INC., and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT W.W. GRAINGER, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>[Filed concurrently with Civil Case Cover Sheet; Declarations of Ariel Kumpinsky, Hank Galatz, and Cristina Berenyi; and Disclosure Statement Pursuant to Federal Rule of Civil Procedure 7.1]<br><br>Stanislaus County Superior Court<br>Case No. CV-23-003187<br><br>Action Filed:     June 8, 2023 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA, PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant W.W. Grainger, Inc. ("Defendant"), through undersigned counsel, hereby removes the above-captioned action from the Superior Court of the State of California for the County of Stanislaus, to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453.

////

////

////

I. **GROUNDS FOR REMOVAL**

1. Removal is proper pursuant to 28 U.S.C. sections 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Defendant pursuant to the Class Action Fairness Act of 2005 ("CAFA"), *Id.* § 1332(d).

A. **THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446 ARE SATISFIED**

1. **Defendant's Removal Is Timely.**

2. On June 8, 2023, Plaintiff filed an unverified Complaint in the Superior Court of the State of California, County of Stanislaus, commencing the action entitled "*Jenyfer Farias Sanchez v. W.W. Grainger, Inc.*, Case No.: CV-23-003187 ("Complaint"). Pursuant to 28. U.S.C. 1446(a), true and correct copies of the Summons and Complaint are attached as **Exhibit A**. Defendant's registered agent for service of process was served with the Complaint on June 8, 2023. True and correct copies of the documents served on Defendant's registered agent are attached to this Notice as **Exhibit B**. On July 7, 2023, Defendant timely filed an answer to Plaintiff's Complaint. A copy of the Answer is attached as **Exhibit C**.

3. The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("*Harris*"). In *Harris,* the Ninth Circuit held that defendants have no obligation to investigate or develop additional information as to removability. *Id.* at 694 ("[N]otice of removability under 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by the defendant). In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit reinforced its decision in *Harris* regarding the duty to investigate removability*,* finding that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" to ascertain removability. *Kuxhausen*, 707 F.3d at 1139. In *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Ninth Circuit affirmed Harris's holding "that a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." *Roth* explained that "a defendant who has not lost the

2

right to remove because of a failure to timely file…may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id*. 1123. As such, the time to remove has not yet been triggered.

4. Regardless, this Notice is filed within thirty (30) days of June 8, 2023, and thus it is timely.

5. This case is related to the matter entitled, *Veronica Rodriguez v. W. W. Grainger et al.*, Case No. 1:23-cv-00422-JLT-HBK which was removed to this court on March 20, 2023, and is currently before District Judge Jennifer Thurston. A separate Notice of Related Cases will be filed following removal.

## 2.    **Defendant Has Provided Proper Notice.**

6. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to the Nader Declaration filed concurrently herewith.

7. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California in Stanislaus County and with the Clerk of the Eastern District of California. True and correct copies of the Notice to the Plaintiff and the state court shall be filed promptly.

## 3.    **All Elements of Diversity Jurisdiction Are Present.**

8. As a preliminary matter, for purposes of establishing diversity under CAFA, this Court need only find that there is diversity between one putative class member and the named Defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

### (a)    **Defendant is a citizen of Illinois.**

9. Defendant was at the time of the filing of this action, and still is, a corporation incorporated under the laws of Illinois. (Galatz Decl. ¶ 4.) Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The U.S. Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corporation v. Friend*, 559 U.S. 77 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers

direct, control, and coordinate the corporation's activities." *Id.* at 78. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

10. Defendant's principal place of business and the location where its executive and senior management personnel coordinate its corporate activities is Lake Forest, Illinois. (Galatz Decl. ¶ 4).

11. Therefore, at all material times, Defendant has been a citizen of Illinois.

12. There are no other named Defendants in this action. Accordingly, there is no requirement for anyone else to join in this removal. The citizenship of fictitiously-named *"Doe"* defendants is to be disregarded for the purposes of removal based on diversity jurisdiction. 28 U.S.C. § 1441(a).

**(b)   Plaintiff is a citizen of California and all PCMs are presumed to be citizens of California.**

13. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place they reside with the intention to remain or to which they intend to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

14. Plaintiff alleges that she is and was a resident of California, and "for at least four (4) years prior to the filing of this action and continuing to the present" she was denied meal breaks, rest period breaks, overtime, and other alleged violations of wage and labor laws. (Exh. A, ¶¶ 2-3.) Plaintiff also alleges she "was employed by Defendants in Stanislaus County, California … as a non-exempt, hourly employee in California, including in and around the city of Patterson, County of Stanislaus." (Exh. A, ¶ 15.) *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Therefore, Plaintiff is a citizen of California.

15. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See, Lew,* 797 F.2d at 750 ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow not a citizen of California (despite her allegations) and was instead a citizen

of Illinois (and there is no evidence that is the case), the hundreds of putative class members, all of whom worked in California (Exh. A ¶¶ 34, Declaration of Ariel Kumpinsky ("Kumpinsky Decl."), ¶7), are also citizens of California.

16. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met. Moreover, because Defendant is not a citizen of California, the exceptions to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3) and (d)(4) are inapplicable.

**B.     FEDERAL JURISDICTION ATTACHES PURSUANT TO CAFA**

17. Under CAFA, the Federal District Court has jurisdiction if:

    a) There are at least 100 class members in all proposed plaintiff classes; and

    b) The combined claims of all class members exceed $5 million exclusive of interest and costs; and

    c) Any class member (named or not) is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

**1.     There Are At Least 100 Class Members in the Proposed Class.**

18. Plaintiff's class is defined as "all current and former California employees of Defendants since the date four (4) year prior to the filing of this complaint." (Exh. A, Complaint at ¶31.) Plaintiff asserts that this category constitutes the "California Class." (Exh. A, ¶31.)

19. The Plaintiff's Complaint asserts claims for: (1) failure to provide meal periods in violation of Labor Code §§ 226.7, 512, and 558; (2) failure to provide rest periods in violation of Labor Code §§ 226.7, 512, and 558; (3) Failure to pay all wages in violation of under Labor Code §§ 510, 1194, and 1194.2; (4) Knowing and intentional failure to comply with itemized employee wage statement provisions (Labor Code §226(a), (e)); (5) Failure to timely pay wages due at termination (Labor Code §§ 201-203); (6) failure to timely pay employees in violation of Labor Code § 204(a)(b); (7) Failure to reimburse for business expenses in violation of Labor Code §2802; (8) Failure to pay for all hours worked, including overtime hours worked in violation of Labor Code § 210, 218; (9) Failure to provide place of employment that is safe and healthful in violation of Labor Code §§ 6400, 6401, 6403, 6404, 6407, and 8 C.C.R. 3202; and (10) Violations of Business & Professions Code § 17200 *et seq*.

20. Plaintiff alleges that "the potential members of the proposed Class are so numerous that joinder of all members of the proposed Class is impracticable" but also alleges that there are "over seventy-five (75) Class members in the State of California." (Exh. A, ¶ 34.) Based on a review of Defendant's business records, 1,934 individuals were employed as hourly employees at Defendant's distribution centers within the State of California (collectively referred to as the **"putative class members"** or **"PCMs"**) at some time during the period from June 7, 2019 until May 30, 2023 (the **"Relevant Period"**).[1] (Kumpinsky, ¶ 7.)[2] Defendant denies any liability in this case, both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of any putative class. However, for purposes of jurisdictional requirements for removal only, a combination of Plaintiff's Complaint allegations and Defendant's internally gathered information shows that there is a putative class of more than 100 members, and therefore the first requirement of CAFA jurisdiction is satisfied.

### 2.   The Requisite $5 Million Amount In Controversy Is Satisfied.

21. CAFA authorizes the removal of class-action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

22. In the Complaint, Plaintiff seeks, among other things, unpaid minimum and overtime wages, unpaid meal and rest break premiums, wage statement penalties, and waiting time penalties during the applicable statutory periods on behalf of herself and the putative class members. (*See*

---

[1] Defendant acknowledges that the relevant "statutory" period is from June 7, 2019 until present. Because of the need to review the data for this Notice of Removal by a date certain, Defendants have designated June 7, 2019 until June 8, 2023 as the "Relevant Period" for purposes of this Notice of Removal, but review of data one week short of that amount still yields a total count of 1,934 employees who are PCMs, well over the jurisdictional minimum of 100 persons.

[2] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from Defendant and their counsel constitute sufficient evidence to establish the amount in controversy. See, e.g., *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set[…] forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N.D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, pay periods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

*generally* Exh. A.)  As set forth below, even when factoring in potential amounts in controversy for less than half of the total claims asserted, the amount in controversy still exceeds the $5 million threshold for CAFA removal.[3]  *See* 28 U.S.C. § 1332(d).

### (a)   Relevant Class Member Data.

23. Plaintiff alleges violations of Section 17200 *et seq.* of the Business & Professions Code.  A four-year statutory period applies to the class-action claims for meal/rest premiums and unpaid wages when the complaint pleads a derivative Unfair Competition ("UCL") claim.  Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

24. Upon careful review of Defendant's records[4] over the Relevant Period, Defendant employed 1,934 individuals as PCMs.  (Kumpinsky Decl. ¶7.)

25. During the Relevant Period, PCMs worked approximately 74,863 biweekly pay periods in California. (*Id*.).

26. During the Relevant Period, the PCMs earned an average of over $22.47 per hour. (Kumpinsky Decl., ¶15.)

27. Within the four-year statute of limitations applicable to the First, Second and Third Causes of Action based on the June 8, 2023 filing date of the complaint, and data covering the period June 7, 2019 to June 8, 2023, 1,934 putative class members worked 74,863 biweekly pay periods in California. (*Id*. at ¶7.)

28. Within the three-year statute of limitations applicable to the Fifth Cause of Action based on the June 8, 2023 filing date of the complaint, and data covering the period June 8, 2020 to Jun 8, 2023, 771 putative class members separated employment from Defendant. (*Id.,* at ¶¶ 9, 29.)

---

[3] In alleging the amount in controversy for purposes of CAFA removal, Defendant does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the operative Complaint.  Nor does Defendant concede that any or all of the current or former employees are entitled to any recovery in this case, or are appropriately included in the putative class.

[4] Business records that were reviewed by Ariel Kumpinsky and referenced in his declaration were provided by Defendant through its counsel, as set forth in the Declaration of Cristina Berenyi.

29. Within the one-year statute of limitations applicable to the Fourth Cause of Action, based on the June 8, 2023 filing date of the complaint, and data covering the period June 8, 2022 to June 8, 2023, 1,275 putative class members worked 25,205 biweekly pay periods. (*Id.,* at ¶¶8, 31, 32.)

### (b) Plaintiff's meal period claim in her First Cause of Action places at least of $2,566,545.87 in controversy.

30. Plaintiff's First Cause of Action alleges violations of Labor Code 226.7, 512 and 588, and IWC Order No. 5-2001, Section 12. (See, Exh. A, ¶¶ 19, 42-43.) Specifically, Plaintiff alleges "…Defendant's California employees were routinely unable, and not authorized to take an uninterrupted 30-minute meal break for every shift they worked. Further, Plaintiff and Defendant's California employees are alleged to have been "forced to continue working through their meal breaks in order to assist Defendant's needs." (See, Exh. A, ¶¶19, 43.) In addition, Plaintiff alleges "Defendants failed to pay premium wages of one hour's pay for each missed meal break to Plaintiff and Defendant's California employees who were denied timely meal breaks…." (Exh. A, ¶¶19, 43.)

31. If an employer fails to provide an employee a meal period as required, the employee may recover one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided. Cal. Labor Code § 226.7. Plaintiff seeks unpaid meal period premiums under Cal. Labor Code § 226.7 and Wage Order 5-2001, on behalf of herself and the putative class. (Exh. A, ¶¶ 42-43, Prayer for Relief.)

32. The Complaint does not allege the number of meal periods that were not provided to Plaintiff or the putative class members. However, Plaintiff's allegations regarding the frequency of purported meal period violations are that this precedent condition was "routinely" occurring. (Exh. A, ¶¶ 3, 19, 43.) Where Plaintiff alleges a systematic deprivation of rights, and the plaintiff has alleged a "uniform" policy and practice, it is appropriate to assume a 100 percent violation rate in calculating the amount in controversy. *See Amaya v. Consolidated Container Co.*, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909 (C.D. Cal. July 28, 2015) ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) and where the plaintiff offers

1  no evidence rebutting this violation rate."). Even though Defendant could have relied on a 100 percent violation rate, it conservatively applied a violation rate of 20% of shifts worked that are greater than five hours, during the relevant four-year statute of limitations.

33.   To identify those shifts for which a meal period premium alleged to be owed if Plaintiff's allegations were true, Ariel Kumpinsky reviewed the Timekeeping Data to determine which shifts the putative class members worked more than five hours. He found 567,175 shifts with more than five hours recorded. (Kumpinsky Decl., ¶18.) For each putative class member, Mr. Kumpinsky multiplied the number of shifts worked of more than five hours by the potential violation rate and rounded up to the next whole number. For example, if an employee worked 121 shifts of more than five hours, he assigned 25 missed meal period premiums (121 x 20% = 24.2, which rounds up to 25) at a 20% violation rate. (*Id.*, ¶19.) Utilizing the average hourly wage rate paid to Plaintiffs to determine the value of the missed meal period premium, the example outcome of multiplying the 25 missed meal period premiums by $22.47 per hour, would result in $561.75. (*Id.,* ¶20.)

34.   After performing similar calculations for all 1,934 employees, the total number of potential missed meal violations equated to 114,221, and the total potential missed period premiums yielded the sum of $2,566,545.87 at a 20% violation rate. (Kumpinsky Decl., ¶¶18-21.)

**(c)   Plaintiff's Rest Period Claim in her Second Cause of Action places at least $2,718,308.25 in controversy.**

35.   Plaintiff's Second Cause of Action alleges violations of Labor Code 226.7, 512 and 588, and IWC Order No. 5-2001, Section 12. (See, Exh., A, ¶¶ 3, 19, 49.) Plaintiff alleges that "…Defendant's California employees were routinely unable, and not authorized to take their 10-minute rest periods for every shift they worked. Specifically, Plaintiff and Defendant's California employees were forced to continue working through their rest breaks in order to assist Defendant's needs." (See, Exh. A, ¶¶3, 19, 49.) In addition, Plaintiff alleges "Defendants failed to pay premium wages of one hour's pay for each missed rest break to Plaintiff and Defendant's California employees who were denied timely rest breaks…." (Exh. A, ¶¶3, 49.)

36. If an employer fails to provide an employee a rest period as required, the employee may recover one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided. Cal. Labor Code § 226.7. Plaintiff seeks unpaid rest period premiums under Cal. Labor Code § 226.7 and Wage Order 5-2001, on behalf of herself and the putative class. (Exh. A, ¶¶ 3, 49, Prayer for Relief.)

37. The Complaint does not allege the number of rest periods that were not provided to Plaintiff or the putative class members. Plaintiff's allegations regarding the frequency of purported rest period violations are that it was "routinely" occurring. (Exh. A, ¶¶ 3, 19, 49.) Where Plaintiff alleges a systematic deprivation of rights, and the plaintiff has alleged a "uniform" policy and practice, it is appropriate to assume a 100 percent violation rate in calculating the amount in controversy. *See Amaya v. Consolidated Container Co.*, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909 (C.D. Cal. July 28, 2015) ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) and where the plaintiff offers no evidence rebutting this violation rate.")

38. Even though Defendant could have relied on a 100 percent violation rate, it conservatively applied a violation rate of 20% of shifts, during the relevant four-year statute of limitations. To identify those shifts for which a rest break premium is owed, if Plaintiff's allegations were true, Ariel Kumpinsky reviewed the Timekeeping Data to determine which shifts the putative class members worked more than three and a half hours, and found 600,934 shifts with more than three and a half hours recorded. (Kumpinsky Decl., ¶ 22.) Assuming a potential exposure rate of 20% of shifts worked that are greater than three and a half hours, Mr. Kumpinsky multiplied the number of shifts worked of more than three and a half hours by the potential violation rate and rounded up to the next whole number, for each PCM.

39. After performing these calculations for all 1,934 employees, Mr. Kumpinsky determined the total number of potential rest break violations would be 120,975, and the total potential missed rest break premiums at issue in this case for this claim to be $2,718,308.25 at a pay rate of $22.47 per hour and a 20% violation rate. (Kumpinsky Decl., ¶¶22-24.)

DEFENDANT W.W. GRAINGER, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT

**(d)     Plaintiff's overtime claim in her Third Cause of Action places at least $4,803,602.90 in controversy.**

40. Plaintiff alleges that "Defendant has failed to pay all overtime wages due to non-exempt employees. As a result, employees are not properly compensated for work performance in excess of eight (8) hours in a workday and work performed in excess of forty (40) hours in a workweek at a rate of no less than one and one-half times the regular rate of pay. Employees of Defendant regularly work in excess of eight (8) hours in a day or more than forty (40) hours per week and do not receive overtime compensation at a rate of one and one half of their regular rate. Plaintiff and Defendant's California employees were forced to work overtime and were not paid for all hours worked including all straight time wages, and overtime wages." (Exh. A, ¶ 55.)

41. Plaintiff makes no allegations to indicate any limit to the frequency of the alleged violations. Under these conditions, case law permits limiting the overtime estimate to one hour per week as reasonable. See *Sanchez v. Abbott Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at * 5 (E.D. Cal. June 30, 2021) ("Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice' of failing to pay overtime wages."). See, e.g., *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020); see also *Stanley v. Distrib. Alts., Inc.*, No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates"). Here, as in *Hender* and *Sanchez*, supra, a 20% violation rate is reasonable because Plaintiff alleges a policy and practice of violations and no contrary evidence showing otherwise exists.

42. To identify the most likely shifts for which putative class members could be owed overtime, if Plaintiff's allegations were true, Ariel Kumpinsky reviewed the Timekeeping Data to determine the number of weeks worked by the 1,934 employees. (Kumpinsky Decl., ¶25.)

43. Assuming one hour of unpaid overtime per week, Mr. Kumpinsky multiplied the number of weeks worked of one hour to calculate the potential total time owed for each PCM. For example, if an employee worked 10 weeks, he would assign 10 hours of unpaid overtime. (*Id.*, ¶26.) Mr. Kumpinsky valued the alleged unpaid overtime at the statutory amount of overtime, 1.5 times the class average base pay rate. Continuing the example, he would multiply the 10 hours of alleged unpaid overtime by $22.47 per week by 1.5, or $337.05. (Kumpinsky Decl., ¶27.)

44. After performing these calculations for all 1,934 employees, Mr. Kumpinsky determined the total number of potential overtime hours would be 142,519, and the total potential unpaid overtime would be $4,803,602.90. (Kumpinsky Decl. ¶¶25-28.)

      **(e)**     **Plaintiff's claim for inaccurate wage statements in in her Fourth Cause of Action places at least $2,456,750.00 in controversy.**

45. Plaintiff alleges Defendant that failed to provide accurate wage statements as required by California Labor Code section 226 et seq. (Exh. A, ¶¶21-22, 58-62.)

46. Plaintiff's claim for wage statement penalties is wholly derivative of her claims for unpaid minimum, overtime, and premium wages. As such, it puts at issue every wage statement for every pay period during the 1-year statutory period from June 8, 2022 to the present. See, e.g., *Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period); *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (same)).  Section 226(e) provides penalties for inaccurate wage statements as follows: the "greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)[.]" 1,275 PCMs were identified as provided a wage statement from June 8, 2022 through June 8, 2023. (Kumpinsky Decl., ¶32.)

47. Plaintiff alleges that "Defendant provided …itemized statements which stated inaccurate information including, but not limited to, the number of hours worked, the gross wages earned, and the net wages earned." (Exh. A, ¶ 70.)  Ariel Kumpinsky assigned a penalty of $50 for

the first pay period for each employee and $100 for each subsequent pay period and limited each putative class member's penalty to $4,000. (Kumpinsky Decl, ¶ 32.) 25,205 pay periods were found to be affected. (*Id.*) After performing calculations for each PCM, total alleged Inaccurate Wage Statement Penalties at issue in this case for this claim were determined to be $2,456,750.00. (Kumpinsky Decl., ¶¶31-32.)

       **(f)    Plaintiff's derivative waiting time penalties claim places at least $4,157,848.80 in controversy.**

48. Plaintiff's derivative waiting time penalties claim places at least $1,675,934.40 in controversy.

49. Plaintiff alleges that, "Minimum wages for all hours worked, overtime wages for overtime hours worked, and/or meal period premium wages (all described above), were not paid at the time of Plaintiff's and other similarly situated employees' separation of employment[.]" (Complaint ¶ 41.) The failures to pay minimum wages, overtime wages, and meal period premium wages were, Plaintiff alleges, caused by Defendant's "policies, practices, and/or procedures[.]" (Complaint ¶¶ 15, 20, 28.)

50. If an employer fails to pay all wages due an employee at the time of termination, as required by Labor Code section 201, or within 72 hours after resignation, as required by Labor Code section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days. *Id*. § 203. An employer may not be liable for these penalties if a good faith dispute exists as to whether the wages are owed. Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be willful. "A willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs., tit. 8, § 13520 (emphasis added).

51. To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages. See *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days"); *Tajonar v. Echosphere, LLC*, No. 14cv2732-LAB (RBB), 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015).

52. To calculate the amount in controversy in a waiting time penalties claim, the plaintiff's allegations direct the outcome. Where some amount of wages are alleged to have not been paid at all, "the full thirty-days may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.*, No. 1:13-cv-02067 AWI JLT, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); see also *Crummie v. CertifiedSafety, Inc.*, No. 17-cv-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (holding that where plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit"). When the allegedly unpaid wages are based on 'pattern-and-practice' type allegations, it is reasonable to assume that 100% of the former, non-exempt employees (within the 3-year statute of limitations for Labor Code section 203) will contribute a full 30 days' wages to the amount in controversy. See *Crummie*, 2017 WL 4544747, at *3; *Archuleta v. Avcorp Composite Fabrication, Inc.*, No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *5 (C.D. Cal. Dec. 6, 2018) (finding that an assumption of the maximum thirty-day waiting time penalties was reasonable where "[t]he complaint's claim for waiting time penalties appears to be at least in part based on an allegation that Defendants never paid the 'overtime wages, minimum wages, and meal period violation [payments]' the employees were due."); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) ("Because Plaintiff is asking for a maximum statutory penalty of 30 days, ... it is reasonable to assume based on the FAC that Plaintiff could obtain statutory penalty of maximum 30 days."); *Mariscal v. Ariz. Tile, LLC*, No. 8:20-cv-02071-JLS-KES, 2021 WL 1400892, at *3 (C.D. Cal. Apr. 14, 2021) (same).)

53. Plaintiff does not define a waiting time class. However, Ariel Kumpinsky was able to identify 771 putative class members who terminated from June 8, 2019 through May 30, 2023. For each putative class member, Mr. Kumpinsky assumed 8 hours worked per day. Consistent with California Labor Code §203, he calculated 30 days wages at the average wage rate paid to employees (8 hours worked x 30 days x class average wage rate). After performing these calculations for the 771 terminated employees, the total alleged Waiting Time Penalties at issue in this case for this claim was determined to be $4,157,848.80. (Kumpinsky Decl., ¶¶29-30.)

        **(g)**     **Plaintiff's prayer for attorneys' fees places $4,175,763.955 in controversy.**

54. Plaintiff seeks attorneys' fees on behalf of the putative class. (Ex. A, Prayer for Relief). Attorneys' fees are properly included in the amount in controversy. *See, Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

55. In class action litigation, courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g., Hanlon v. Center for Auto Safety*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%). Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy. *See, e.g., Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendants "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *6-7 (N.D. Cal. 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'"). Without attorneys' fees calculated, however, the amount in controversy is well above the jurisdictional value to remove this matter.

56. The amount in controversy for the claims discussed above, excluding attorneys' fees, total **$16,703,055.82**

57. Twenty-five percent of this amount is **$4,175,763.955.** The combined total yields an amount in controversy of **$20,878,819.78,** which easily exceeds the $5 million required to establish federal jurisdiction under CAFA. This total does not include any valuation of the remaining causes

of action asserted in the Sixth through Tenth Causes of Action. Thus, there is no question that the amount in controversy is met for purposes of attachment of federal jurisdiction pursuant to CAFA.

### (h) Summary of Amount in Controversy.

58. As set forth above, the allegations in the Complaint satisfies the requisite $5 million for purposes of removal under CAFA:

| **Damages** | **Amount** |
|---|---|
| Alleged Meal Period Violations | $ 2,566,545.81 |
| Alleged Rest Period Violations | $ 2,718,308.25 |
| Alleged Unpaid Overtime | $ 4,803,602.90 |
| Alleged Wage Statement Violations | $ 2,456,750.00 |
| Alleged Waiting Time Penalties | $ 4,157,848.80 |
| Attorneys' Fees | $4,175,763.95 |
| **TOTAL** | **$20,878,819.78** |

This amount is only for the First, Second, Third, and Fourth and Fifth Causes of Action. It does not include amounts for the Sixth through Tenth Causes of Action. Thus, by only considering five of the plaintiff's ten causes of action, Defendant was able to clearly establish that removal under CAFA is proper under CAFA is proper under 28 U.S.C. §1332(d).

## II. CONCLUSION

59. This Court, therefore, has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.

60. In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have the opportunity to more fully brief the basis for this removal.

////

////

1   WHEREFORE, Defendant W.W. GRAINGER INC. removes the above-action to this Court.

Respectfully submitted,

DATED: July 10, 2023

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: /s/ Elizabeth D. Rhodes
Michael J. Nader
Elizabeth D. Rhodes

Attorneys for Defendant
W.W. GRAINGER, INC.

DEFENDANT W.W. GRAINGER, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT